**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

BRENDAN ESTRADA,

        Plaintiff,

   v.

CODE 4 SECURITY SERVICES, LLC;
NATHANIEL HERSCHER, an individual; and
REYES MARTINEZ, an individual,

        Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, Brendan Estrada ("Estrada" or "Plaintiff"), by and through his attorneys, HKM Employment Attorneys, LLP, hereby files his Complaint and Jury Demand against Code 4 Security Services, LLC ("Code 4" or the "Company"); Nathaniel Herscher ("Herscher"); and Reyes Martinez ("Martinez") (collectively "Defendants"), and in support thereof states as follows:

### <u>INTRODUCTION</u>

1.     Soon after Plaintiff Brendan Estrada, a Hispanic male, began working for Defendant Code 4 as a Security Officer, he was regularly subjected to derogatory and discriminatory comments about his race and/or national origin by his co-workers.

2.     Despite having knowledge of this harassment, Defendant Code 4 failed to intervene or take any meaningful remedial actions. In failing to take these actions, the Company emboldened Mr. Estrada's co-workers, leading to additional and more severe harassment, including on January

1

8, 2021, when Defendants Martinez and Herscher intentionally handcuffed Mr. Estrada to a chair because of his race and/or national origin. Shockingly, Defendants Martinez and Herscher decided to document themselves accosting Mr. Estrada, as follows:



3.      Despite pleading with Defendants Martinez and Herscher, they failed to release Mr. Estrada. Instead of releasing him, Defendants Martinez and Herscher took the above picture of their discriminatory actions, which they sent to a co-worker in attempt to further ridicule Mr. Estrada because of his race and/or national origin.

4.      Although Mr. Estrada reported what happened to the Company's corporate office immediately after this traumatizing incident, the Company failed to intervene or take any corrective actions.

5.      Rather than engage in conduct designed to abate or eliminate further discrimination and harassment, Defendant Code 4 disciplined Mr. Estrada for allegedly not doing enough to prevent his attackers from harming him, thereby effectively retaliating against Mr. Estrada by punishing him for reporting this brazen act of discrimination.

6.       After witnessing Defendant Code 4's failure to adequately respond to his claims of discrimination, and in light of the fact that his co-workers continued to harass him because of his race and/or national origin and in retaliation for engaging in protected conduct, Mr. Estrada was constructively discharged on April 18, 2021.

7.      As a result of Defendants' unlawful acts and/or omissions, Mr. Estrada now seeks redress under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Colorado Anti-Discrimination Act ("CADA"), 42 U.S.C. § 1981, and Colorado tort law.

## PARTIES

8.      Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

9.      Plaintiff Brendan Estrada is an individual who is and was at all times relevant to the Complaint a resident of and domiciled in the State of Colorado.

10.      At all times relevant to this Complaint, Mr. Estrada was employed by Defendant Code 4 Security Services as a Security Officer.

11.      Defendant Code 4 Security Services, LLC is a Colorado Limited Liability Company with its principal office address being located at 1501 S. Lemay, Suite 201, Fort Collins, CO 80524.

12.      Defendant Code 4 Security Services, LLC is a security company that, in part,

provides and/or supplies security professionals to safeguard and secure businesses and other entities, including but not limited to housing complexes, libraries, and commercial property.

13.    Upon information and belief, Defendant Nathaniel Herscher is an individual who is and was at all times relevant to the Complaint a resident of and domiciled in the State of Colorado.  At all times relevant to this Complaint, Mr. Herscher was employed by Defendant Code 4 Security Services, LLC.

14.    Upon information and belief, Defendant Reyes Martinez is an individual who is and was at all times relevant to the Complaint a resident of and domiciled in the State of Colorado. At all times relevant to this Complaint, Mr. Martinez was employed by Defendant Code 4 Security Services, LLC.

## JURISDICTION AND VENUE

15.    Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

16.    This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 2000e-5(f)(3), 28 U.S.C. § 1331, and 28 U.S.C. § 1343(a)(4).

17.    This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as Plaintiff's state law and federal law claims form part of the same case and controversy.

18.    Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in Colorado.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

19.    Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

20. Plaintiff dually filed his Charges of Discrimination with the Colorado Civil Rights Division ("CCRD") and the Equal Employment Opportunity Commission ("EEOC") against Defendant Code 4 for race, color, and national origin discrimination, as well as retaliation, on or around April 6, 2021, Charge Numbers E2100011833 and 32A-2021-00515. Plaintiff was issued a Right to Sue from the CCRD with respect to the above charge numbers on January 6, 2022, and filed the present action within ninety (90) days of receipt of the same.

21. After requesting the Right to Sue letters from both the EEOC and CCRD, Plaintiff only received the right to sue from the CCRD. Plaintiff anticipates receiving the Right to Sue from the EEOC shortly. To put Defendants on notice of all claims Plaintiff intends to bring and potentially save the parties and the Court resources, Plaintiff includes the Title VII claims in this first Complaint. Plaintiff intends to address with counsel during the 26(f) conference, and with the Court during the scheduling conference, whether an amended pleading will be necessary once the Right to Sue is received from the EEOC.

22. Plaintiff has met all administrative prerequisites prior to filing this action.

## FACTUAL ALLEGATIONS

23. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

24. Plaintiff, a Hispanic male, began working for Defendant Code 4 as a Security Officer on or around October 4, 2020.

25. Throughout Plaintiff's employment with Defendant Code 4, Plaintiff's co-workers referred to him as "dumbass" and "the Mexican."

26. Upon information and belief, Defendant Code 4 had actual and/or constructive

knowledge that Plaintiff's co-workers were referring to Plaintiff by discriminatory names.

27.     Despite having knowledge of this discrimination, Defendant Code 4 failed to take any remedial or corrective actions, thereby allowing the discriminatory treatment of Plaintiff to continue.

28.     On or around January 8, 2021, after several months of being harassed because of his race and/or national origin, Plaintiff's co-workers Defendants Martinez and Herscher—both of whom worked for Defendant Code 4 as Security Officers—intentionally handcuffed Plaintiff to a chair for approximately forty-five minutes, thereby fully restraining his freedom of movement.

29.     Not only did Defendants Martinez and Herscher commit this unlawful and unconscionable act, but they also took photographs of Plaintiff while he was handcuffed and sent them to another co-worker, Kevin Varner, in an attempt to further embarrass and humiliate Plaintiff.

30.     In their text message to Mr. Varner, Defendants Martinez and/or Herscher stated, "We have taken beans hostage," referring to Plaintiff.

31.     Mr. Varner then sent a text message back to Defendants Martinez and/or Herscher stating: "Free the Mexican."

32.     In reply, Defendants Martinez and/or Herscher demanded that Mr. Varner first pay his "ransom," to which Mr. Varner responded by sending a message that said: "Nevermind. keep him [...] you can have him."

33.     But-for Plaintiff's race and/or national origin, Defendant Martinez, Defendant Herscher, and Mr. Varner would not have handcuffed Plaintiff to a chair and/or referred to him by derogatory names.

34.     After Plaintiff was finally released, nearly forty-five (45) minutes later, Plaintiff reported this conduct to Dakota Longtin (Operations Manager) and Travis Hooten (Human Resources) at Defendant Code 4's corporate office.

35.     After receiving Mr. Estrada's report of this horrific and discriminatory conduct, Defendant Code 4 failed to take any meaningful corrective actions.

36.     Upon information and belief, Defendant Code 4 failed to investigate Plaintiff's troubling allegations and failed to discipline Defendant Herscher, Defendant Martinez, and/or Kevin Varner.

37.     Instead, on or around January 12, 2021, Defendant Code 4 retaliated against Plaintiff by issuing him a Corrective Action and Separation Form, which explained that Plaintiff was being disciplined because he "could have been more clear in his communication" to the other co-workers involved in the incident that they needed to stop.

38.     Defendant Code 4 scolded Plaintiff for his "role" in the incident, stating: "Although the situation never should have occurred there is something you could have done that might have changed the circumstances. As a security officer there are times that you must be commanding of a situation. This is one of those moments that you could have changed your tone and been direct stating 'This isn't funny anymore, take the handcuffs off me right now!' In the future, if there is something happening that you do not agree with then state that very directly."

39.     Contrary to Defendant Code 4's assertions, however, Plaintiff had explicitly and unambiguously demanded to be released from the handcuffs—a demand that Defendants Martinez and/or Herscher chose to ignore.

40.     By making these statements and issuing a Corrective Action and Separation Form,

Defendant Code 4 effectively blamed Plaintiff for this incident, despite the fact that he was the victim.

41.     In conjunction with receiving the Corrective Action Form, Plaintiff was placed on a 60-day probationary period.

42.     Upon information and belief, the three co-workers involved in the incident – Herscher, Martinez, and Varner – were not disciplined, issued a Corrective Action Form, put on a probationary period of any kind, nor terminated.

43.     After being issued this Corrective Action Form, Plaintiff's work conditions became increasingly intolerable, as he was exposed to significantly more racial and/or ethnic harassment by his co-workers because he reported the conduct to Defendant Code 4.

44.     On or around April 18, 2021, in light of Defendant Code 4's failure to intervene and/or remedy the situation over the course of a period of several months and the fact that Plaintiff was being forced to endure intolerable working conditions, Plaintiff reasonably decided that he could no longer work for Defendant Code 4 and submitted his resignation.

## FIRST CLAIM FOR RELIEF
### (Hostile Work Environment Based on Race and/or National Origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*)
### (As to Defendant Code 4)

45.      Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

46.     At all times relevant to this Complaint, Plaintiff was an "employee" as defined in 42 U.S.C. § 2000e(f).

47.     At all times relevant to this Complaint, Defendant Code 4 was an "employer" as defined in 42 U.S.C. § 2000e(b).

48.     The phrase "terms, conditions, or privileges of employment," embedded within the text of Title VII, has been interpreted to prohibit employers from subjecting their employees to a discriminatorily hostile or abusive work environment. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

49.     For a hostile work environment claim to exist, the workplace must be permeated with "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.*

50.     Here, Defendant Code 4, by and through its employees, harassed Plaintiff because of his race (Hispanic) and/or his national origin (Mexican).

51.     Defendant Code 4 conduct was sufficiently severe and/or pervasive that a reasonable person in Plaintiff's position would have found his work environment to be hostile and/or abusive.

52.     Moreover, Plaintiff subjectively perceived his work environment to be abusive and hostile, as he believed the conditions he was forced to endure were intolerable and humiliating.

53.     The unlawful employment practices complained of above were intentional and were committed with malice or with reckless indifference to Plaintiff's federally protected rights.

54.     As a direct and proximate result of Defendant Code 4's acts and/or omissions, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment and inconvenience, thereby entitling him to general and special damages, economic damages, and attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**(Wrongful Termination Based on Race and/or National Origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*)**
**(As to Defendant Code 4)**

55.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

56.     At all times relevant to this Complaint, Plaintiff was an "employee" as defined in 42 U.S.C. § 2000e(f).

57.     At all times relevant to this Complaint, Defendant Code 4 was an "employer" as defined in 42 U.S.C. § 2000e(b).

58.     As a Hispanic and Mexican employee, Plaintiff is a member of a protected class under Title VII.

59.     At all times relevant to this Complaint, Plaintiff was qualified and satisfactorily performing his job.

60.     Because of the hostile work environment he was subjected to, Plaintiff was forced to resign from his employment with Defendant Code 4.

61.     Plaintiff's constructive termination occurred under circumstances which give rise to an inference of unlawful discrimination; namely, that he was subjected to severe and pervasive harassment because of his race and/or national origin, which the Company failed to remedy.

62.     Because of the discrimination and harassment he faced while employed by Defendant Code 4, which Defendant Code 4 failed to remedy, Plaintiff had no other choice but to resign as the conditions of his employment were objectively intolerable.

63.     But-for Plaintiff's race and/or national origin, Plaintiff would not have been constructively terminated.

64. The unlawful employment practices complained of above were intentional and were committed with malice or with reckless indifference to Plaintiff's federally protected rights.

65. As a direct and proximate result of Defendant Code 4's acts and/or omissions, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment and inconvenience, thereby entitling him to general and special damages, economic damages, and attorneys' fees and costs.

**THIRD CLAIM FOR RELIEF**
**(Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*)**
**(As to Defendant Code 4)**

66. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

67. Plaintiff reported to Defendant Code 4 harassment by his co-workers, including but not limited to being handcuffed to a chair, and being called "the Mexican."

68. Plaintiff's opposition and complaints regarding Defendant Code 4's unlawful practices were protected activities within the meaning of Title VII, as he maintained a reasonable and good-faith belief that he was being discriminated against by Defendant Code 4 because of his race and/or national origin.

69. Defendant Code 4 unlawfully retaliated against Plaintiff in the terms and conditions of his employment by issuing a Corrective Action, constructively terminating his employment, placing him on probation, and subjecting him to further harassment because he engaged in the above-described statutorily protected activities.

70. A causal connection exists between Plaintiff's protected activities and Defendant Code 4's unlawful retaliation.

71.     Defendant Code 4's above-described retaliatory conduct, including its constructive termination of Plaintiff, is of the type that would be materially adverse to a reasonable employee and chill such employee's willingness to engage in protected activity, such as opposing discrimination by making internal reports of same to management for Defendant Code 4.

72.     The unlawful employment practices complained of above were intentional and were committed with malice or with reckless indifference to Plaintiff's federally protected rights.

73.     As a direct and proximate result of Defendant Code 4's acts and/or omissions, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment and inconvenience, thereby entitling him to general and special damages, economic damages, and attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**
**(Hostile Work Environment Based on Race and/or National Origin in Violation of the Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-34-301)**
**(As to Defendant Code 4)**

74.     Plaintiff incorporates by reference the above paragraphs as if set forth separately herein.

75.     At all times Relevant to this Complaint, Plaintiff was an "employee" as defined by C.R.S. § 24-34-401(2).

76.     At all times Relevant to this Complaint, Defendant Code 4 was an "employer" as defined by C.R.S. § 24-34-401(3).

77.     CADA prohibits employers from harassing an employee because of that employee's race, creed, color, sex, sexual orientation, gender identity, gender expression, religion, age, national origin, or ancestry. C.R.S. § 24-34-402(1)(a).

78.     For a hostile work environment claim to exist, the workplace must be permeated

with "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *See Harris*, 510 U.S. at 21.

79. Plaintiff belongs to protected classes under CADA because he is Hispanic and Mexican.

80. At all times during his employment, Plaintiff was qualified for his job and performed his duties in accordance with Defendant Code 4's legitimate expectations.

81. Here, Defendant Code 4, by and through its employees and/or agents, harassed Plaintiff because of his race (Hispanic) and/or his national origin (Mexican).

82. Defendant Code 4's conduct was sufficiently severe and/or pervasive that a reasonable person in Plaintiff's position would have found his work environment to be hostile and/or abusive.

83. Moreover, Plaintiff subjectively perceived his work environment to be abusive and hostile, as he believed the conditions he was forced to endure were intolerable and humiliating.

84. As a direct and proximate result of the Defendant Code 4's acts and/or omissions, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment and inconvenience, thereby entitling him to general and special damages, economic damages, and attorneys' fees and costs.

**FIFTH CLAIM FOR RELIEF**
**(Wrongful Termination Based on Race and/or National Origin in violation of the**
**Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-34-301)**
**(As to Defendant Code 4)**

85. Plaintiff incorporates by reference the above paragraphs as if set forth separately herein.

86.     At all times Relevant to this Complaint, Plaintiff was an "employee" as defined by C.R.S. § 24-34-401(2).

87.     At all times Relevant to this Complaint, Defendant Code 4 was an "employer" as defined by C.R.S. § 24-34-401(3).

88.     As a Hispanic and Mexican employee, Plaintiff was a member of a protected class under CADA.

89.     At all times relevant to this Complaint, Plaintiff was qualified and satisfactorily performing his job.

90.     Plaintiff's constructive termination occurred under circumstances which give rise to an inference of unlawful discrimination; namely, that he was subjected to severe and pervasive harassment because of his race and/or national origin, which Defendant Code 4 failed to remedy.

91.     Because of the discrimination and harassment he faced while employed by Defendant Code 4, which Defendant Code 4 failed to remedy, Plaintiff had no other choice but to resign as the conditions of his employment were objectively intolerable.

92.     But-for Plaintiff's race and/or national origin, Plaintiff would not have been constructively terminated.

93.     As a direct and proximate result of Defendant Code 4's acts and/or omissions, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment and inconvenience, thereby entitling him to general and special damages, economic damages, and attorneys' fees and costs.

**SIXTH CLAIM FOR RELIEF**
**(Retaliation in Violation of the Colorado Anti-Discrimination Act ("CADA"), C.R.S.**
**§ 24-34-301)**
**(As to Defendant Code 4)**

94.     Plaintiff incorporates by reference the above paragraphs as if set forth separately herein.

95.     Plaintiff reported to Defendant Code 4 harassment by his co-workers, including but not limited to being handcuffed to a chair, and being called "the Mexican."

96.     Plaintiff's opposition and complaints regarding Defendant Code 4's unlawful practices were protected activities within the meaning of CADA, as he maintained a reasonable and good-faith belief that he was being discriminated against by Defendant Code 4 because of his race and/or national origin.

97.     Defendant Code 4 unlawfully retaliated against Plaintiff in the terms and conditions of his employment by constructively terminating his employment, placing him on probation, and subjecting him to further harassment because he engaged in the above-described statutorily protected activities.

98.     A causal connection exists between Plaintiff's protected activities and Defendant Code 4's unlawful retaliation.

99.     Defendant Code 4's above-described retaliatory conduct, including its constructive termination of Plaintiff, is of the type that would be materially adverse to a reasonable employee and chill such employee's willingness to engage in protected activity, such as opposing discrimination by making internal reports of same to management for Defendant Code 4.

100.    As a direct and proximate result of Defendant Code 4's acts and/or omissions, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment and

inconvenience, thereby entitling him to general and special damages, economic damages, and attorneys' fees and costs.

**SEVENTH CLAIM FOR RELIEF**
**(Hostile Work Environment Based on Race, Ancestry, Ethnicity, Ethnic Traits, and/or National Origin in Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"))**
**(As to Defendant Code 4)**

101.    Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

102.    42 U.S.C. § 1981 not only prevents racial discrimination, but also retaliation against those who oppose it. *Parker Excavating, Inc. v. Lafarge West, Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017)

103.    42 U.S.C. § 1981 authorizes a plaintiff to bring a claim for retaliation under the same standards applied to claims brought under Title VII. *Id.*

104.    In October of 2020, Defendant Code 4 entered into a contract with Plaintiff that is subject to 42 U.S.C. § 1981.

105.    Plaintiff is a member of a protected class under 42 U.S.C. § 1981 in light of his race (Hispanic) and ancestry (Mexican).

106.    For a hostile work environment claim to exist, the workplace must be permeated with "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris.*, 510 U.S. at 21.

107.    Here, Defendant Code 4, by and through its employees and/or agents, harassed Plaintiff because of his race (Hispanic) and/or his ancestry (Mexican).

108.   Defendant Code 4's conduct was sufficiently severe and/or pervasive that a reasonable person in Plaintiff's position would have found his work environment to be hostile and/or abusive.

109.   Moreover, Plaintiff subjectively perceived his work environment to be abusive and hostile, as he believed the conditions he was forced to endure were intolerable and humiliating.

110.   The unlawful employment practices complained of above were intentional and were committed with malice or with reckless indifference to Plaintiff's federally protected rights.

111.   As a direct and proximate result of Defendant Code 4's acts and/or omissions, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment and inconvenience, thereby entitling him to general and special damages, economic damages, and attorneys' fees and costs.

**EIGHTH CLAIM FOR RELIEF**
**(Wrongful Termination Based on Race, Ancestry, Ethnicity, Ethnic Traits, and/or National Origin in Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"))**
**(As to Defendant Code 4)**

112.   Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

113.   42 U.S.C. § 1981 prohibits discrimination in the making and enforcement of contracts and is designed to provide a remedy against discrimination in employment on the basis of race, ancestry, and/or ethnic traits.

114.   Plaintiff is a member of a protected class under 42 U.S.C. § 1981 in light of his race (Hispanic) and ancestry (Mexican).

115.   At all times relevant to this Complaint, Plaintiff was qualified and satisfactorily

performing his job.

116.    Plaintiff's constructive termination occurred under circumstances which give rise to an inference of unlawful discrimination; namely, that he was subjected to severe and pervasive harassment because of his race and/or national origin, which Defendant Code 4 failed to remedy.

117.    Because of the discrimination and harassment he faced while employed by Defendant Code 4, which Defendant Code 4 failed to remedy, Plaintiff had no other choice but to resign as the conditions of his employment were objectively intolerable.

118.    But-for Plaintiff's race and/or ancestry, Plaintiff would not have been constructively terminated.

119.    The unlawful employment practices complained of above were intentional and were committed with malice or with reckless indifference to Plaintiff's federally protected rights.

120.    As a direct and proximate result of Defendant Code 4's acts and/or omissions, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment and inconvenience, thereby entitling him to general and special damages, economic damages, and attorneys' fees and costs.

**NINTH CLAIM FOR RELIEF**
**(Retaliation in Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981**
**("Section 1981"))**
**(As to Defendant Code 4)**

121.    Plaintiff's opposition and complaints regarding Defendant Code 4's illegal practices were protected activities under Section 1981, as he maintained a reasonable and good-faith belief that he was being discriminated against by Defendant Code 4 because of his race and/or ancestry.

122.    Defendant Code 4 unlawfully retaliated against Plaintiff in the terms and conditions

18

of his employment by constructively terminating his employment, placing him on probation, and subjecting him to further harassment because he engaged in the above-described statutorily protected activities.

123.    A causal connection exists between Plaintiff's protected activities and the Company's unlawful retaliation.

124.    Defendant Code 4's above-described retaliatory conduct, including its constructive termination of Plaintiff, is of the type that would be materially adverse to a reasonable employee and chill such employee's willingness to engage in protected activity, such as opposing discrimination by making internal reports of same to management for Defendant Code 4.

125.    The unlawful employment practices complained of above were intentional and were committed with malice or with reckless indifference to Plaintiff's federally protected rights.

126.    As a direct and proximate result of Defendant Code 4's acts and/or omissions, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment and inconvenience, thereby entitling him to general and special damages, economic damages, and attorneys' fees and costs.

**TENTH CLAIM FOR RELIEF**
**False Imprisonment**
**(As to Defendants Martinez and Herscher)**

127.    Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

128.    Defendants Martinez and Herscher intended to restrict Plaintiff's freedom of movement and did restrict his freedom of movement when Defendants Martinez and Herscher handcuffed Plaintiff to a chair for approximately forty-five (45) minutes and refused to release

Plaintiff.

129.    While handcuffed, Plaintiff was aware that his movement was restricted.

130.    This restriction in Plaintiff's ability to move were without his consent.

131.    As a direct and proximate result of Defendants Martinez and Herscher's assault against Plaintiff, as described above, Plaintiff sustained physical and/or emotional injuries.

132.    As a result of Defendants Martinez and Herscher's aforementioned acts and omissions, Plaintiff has suffered damages, injuries, and losses, including economic losses, emotional distress, and pain and suffering, which are highly personal, stem from Defendants Martinez and Herscher's harassment of Plaintiff, and did not arise out of Plaintiff's employment. Further, Plaintiff's injuries did not result from risks inherent in his employment.

**ELEVENTH CLAIM FOR RELIEF**
**Assault**
**(As to Defendants Martinez and Herscher)**

133.    Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

134.    Defendants Martinez and Herscher intended to cause harmful and/or offensive physical contact with Plaintiff or intended to place Plaintiff in apprehension of such contact when they handcuffed him to a chair.

135.    Defendants Martinez and Herscher placed Plaintiff in apprehension of immediate physical contact.

136.    Defendants Martinez and Herscher's contact of Plaintiff was or appeared to be harmful or offensive.

137.    Defendants Martinez and Herscher's contact of Plaintiff resulted in injuries to

Plaintiff.

138.    Defendants Martinez and Herscher had no justification for their contact with Plaintiff.

139.    As a direct and proximate result of Defendants Martinez and Herscher's assaults against Plaintiff that were described above, Plaintiff sustained physical and/or emotional injuries.

140.    As a result of Defendants Martinez and Herscher's aforementioned acts and omissions, Plaintiff has suffered damages, injuries, and losses, including economic losses, emotional distress, and pain and suffering, which are highly personal, stem from Defendants Martinez and Herscher's harassment of Plaintiff, and did not arise out of Plaintiff's employment. Further, Plaintiff's injuries did not result from risks inherent in his employment.

**TWELFTH CLAIM FOR RELIEF**
**Battery**
**(As to Defendants Martinez and Herscher)**

141.    Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

142.    Defendants Martinez and Herscher intended to cause offensive and/or harmful physical contact with Plaintiff or knew they would probably make such contact.

143.    A harmful or offensive contact with Plaintiff occurred.

144.    As a direct and proximate result of Defendants Martinez and Herscher's conduct and batteries against Plaintiff that were described above, Plaintiff sustained physical and/or emotional injuries.

145.    As a result of Defendants Martinez and Herscher's aforementioned acts and omissions, Plaintiff has suffered damages, injuries, and losses, including economic losses,

emotional distress, and pain and suffering, which are highly personal, stem from Defendants Martinez and Herscher's harassment of Plaintiff, and did not arise out of Plaintiff's employment. Further, Plaintiff's injuries did not result from risks inherent in his employment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendants and order the following relief as allowed by law:

A.      Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;

B.      Back pay and benefits;

C.      Front pay and benefits;

D.      Punitive damages and exemplary damages, as permitted by law;

E.      Attorneys' fees and costs of this action (including expert witness fees), as permitted by law;

F.      Pre-judgment and post-judgment interest at the highest lawful rate; and

G.      Such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Respectfully submitted this 7th day of January 2022.

**HKM EMPLOYMENT ATTORNEYS LLP**


By: *s/ Jesse K. Fishman*
Jesse K. Fishman (44807)
Claire E. Hunter (39504)

HKM Employment Attorneys LLP
730 17th Street, Suite 750
Denver, Colorado 80202
Telephone: (720) 668-8989
jfishman@hkm.com
chunter@hkm.com
*Attorneys for Plaintiff*